**UNITED STATES of America, Plaintiff, Appellee,**

v.

**LITTLE JOE TRAWLERS, INC., et al., Defendants, Appellees.**

**Jerry Daughton, et al., Plaintiff, Intervenors, Appellants.**

**No. 85–1228.**

United States Court of Appeals, First Circuit.

Argued Oct. 9, 1985.

Decided Jan. 2, 1986.

Robert E. Walsh with whom Jeffrey A. Breit, and Breit, Rutter & Montagna, Norfolk, Va., were on brief for plaintiff, intervenors, appellants.

John L. Pedrick, Jr., with whom Richard K. Willard, Acting Asst. Atty. Gen., and J. Christopher Kohn, Director, Commercial Litigation Branch, Washington, D.C.; William F. Weld, U.S. Atty., and Marianne B. Bowler, Asst. U.S. Atty., Boston, Mass. were on brief for plaintiff, appellee United States of America.

Before BOWNES, TORRUELLA and TIMBERS,[*] Circuit Judges.

TIMBERS, Circuit Judge:

Jerry Daughton et al. ("appellants"), seamen employed by Little Joe Trawler's, Inc. whose *in rem* action against the F/V Marco Antonio for enforcement of their wage claims was dismissed, appeal from a final decree of foreclosure and order for disbursement entered February 12, 1985 in the District of Massachusetts, John J. McNaught, *District Judge.* The essential issue presented by this appeal is whether a party (appellants-seamen) whose *in rem* action against a vessel was dismissed may properly appeal from an order for disbursement of the proceeds from the sale of the vessel pursuant to a subsequent *in rem* action commenced by the government against the vessel. D.N. Kelly & Son, Inc., who claimed a preferred maritime lien against the proceeds, is not involved in this appeal. We hold that appellants do not have standing to prosecute this appeal. We dismiss the appeal.

## I.

A summary of the facts believed necessary to an understanding of the essential issue on appeal requires a close examination of the history of this litigation.

Appellants are various seamen who were employed by Little Joe Trawler's, Inc. and worked on the vessel F/V Quique III. Attempting to enforce a state court judgment for wage claims, they seized the F/V Marco Antonio, another vessel owned by Little Joe Trawler's. In addition to the *in rem* action commenced against the F/V Marco Antonio, appellants commenced an *in personam* action against Little Joe Trawler's. A United States Marshal seized the F/V Marco Antonio on July 14, 1982. D.N. Kelly & Son, Inc. served as substitute custodian of the vessel from July 14, 1982 until confirmation of its sale on May 31, 1983. The sale, however, resulted from the United States' *in rem* action against the F/V Marco Antonio.

Little Joe Trawler's had defaulted on a note and mortgage held by the United States Government. The government, through the National Marine Fisheries Services, had guaranteed the financing for the F/V Marco Antonio and held a first preferred mortgage on the vessel. On August 4, 1982, the government filed a complaint to foreclose on the mortgage it held on the vessel. These two *in rem* claims, that of the government and that of the seamen, were consolidated in the district court on September 10, 1982. Since the vessel al-

---

[*] Of the Second Circuit, by designation.

ready had been seized and was in the custody of Kelly & Son, the government did not "reseize" the vessel until February 28, 1983. The government asserts that it did not reseize the vessel immediately in its own *in rem* action because it did not realize until later that the seamen's *in rem* action against the F/V Marco Antonio was improper.

On July 12, 1983 the district court granted the government's motion to dismiss appellants' *in rem* action against the F/V Marco Antonio. The district court ruled that the law required appellants to commence an *in rem* action against the vessel on which they worked (the Quique III) in order to assert a claim for seamen's wages and that, therefore, the seizure of the F/V Marco Antonio was improper.

Pursuant to the government's *in rem* action, the F/V Marco Antonio was sold for $230,000 on May 31, 1983. Kelly & Son, who appeared as an intervening complainant in the consolidated actions, claimed a preferred maritime lien against the proceeds of the vessel.[1] Kelly & Son's claim for $16,718.20 included the expenses incurred in storing and maintaining the F/V Marco Antonio from the time of the seamen's seizure of the vessel on July 14, 1982 until its sale on May 31, 1983.

On February 13, 1984 the district court granted partial summary judgment in favor of Kelly & Son to the extent of its storage costs only from the time of the government reseizure of the vessel on February 28, 1983 until May 31, 1983, the date of sale. The court reasoned that, since no *in rem* action could be commenced against the vessel based on the seamen's wage claims, the government should not be responsible for costs incurred during the seamen's *in rem* action.

In light of this history of the litigation, we turn directly to the essential issue of whether appellants have standing to prosecute this appeal from the disbursement order.

II.

Appellants claim that the government received a benefit from the seamen's improper seizure and storage of the vessel. In determining the proper distribution of the proceeds from the sale of the vessel, appellants assert that Kelly & Son is entitled to its costs from the time the *in rem* actions were consolidated.

The government claims that appellants do not have standing on this appeal to assert the interests of Kelly & Son and that the government should not be responsible for the costs of storage because the seamen seized the wrong vessel. Appellants counter that their interests stem from the liability of the seamen or their attorneys to Kelly & Son for the costs incurred until the time of the government seizure.

In determining whether appellants have standing to prosecute this appeal, we must focus on the effect of the district court's determination as to the proper distribution of the proceeds from the sale of the F/V Marco Antonio. On February 13, 1984, in ruling on Kelly & Son's motion for summary judgment, the court stated:

"The Court agrees with the government's arguments to the extent that D.N. Kelly & Son, Inc. should be paid storage fees of $4,600.00 which accrued from March 1, 1983 through May 31, 1983. I had previously ruled that no *in rem* action would lie against the F/V Marco Antonio. (See Memorandum and Order dated July 12, 1983). That being so, I find that the law firm of Breit, Rutter and Montagna had arrested a ves-

---

1. 46 U.S.C. § 953(b) (1982) provides:

"Upon the sale of any mortgaged vessel by order of a district court of the United States in any suit in rem in admiralty for the enforcement of a preferred mortgage lien thereon, all preexisting claims in the vessel, including any possessory common-law lien of which a lienor is deprived under the provisions of section

952 of this title, shall be held terminated and shall thereafter attach, in like amount and in accordance with their respective priorities, to the proceeds of the sale; except that the preferred mortgage lien shall have priority over all claims against the vessel, except (1) preferred maritime liens, and (2) expenses and fees allowed and costs taxed, by the court."

sel against which no claim in admiralty could be pursued. Certainly, the government cannot be expected to pay storage and winterizing costs for the improper seizure of this vessel."

On February 12, 1985, the district court entered a final decree of foreclosure and order for disbursement.[2]

■ At the time the district court entered these orders, appellants' *in rem* action was no longer before the court. Their *in rem* action had been dismissed on July 12, 1983. The determination of Kelly & Son's right to part of the proceeds from the sale of the F/V Marco Antonio stemmed only from the government's *in rem* claim. Although appellants filed a memorandum in support of Kelly & Son's motion for summary judgment, appellants did not hold a maritime lien against the F/V Marco Antonio; they were not parties to the *in rem* action any longer; and they were not entitled to any proceeds from the sale of the F/V Marco Antonio. "[A] party who has no interest in a fund cannot appeal from an order disbursing the fund." *Pittston Stevedoring Corp. v. Dellaventura,* 544 F.2d 35, 46 (2d Cir.1976), *citing Seaboard Surety Co. v. United States,* 306 F.2d 855, 859 (9th Cir.1962).

■ To have standing to appeal, an appellant ordinarily must have been a party to the proceeding below and have been aggrieved by the order appealed from. *SEC v. An-Car Oil Co.,* 604 F.2d 114, 119 (1st Cir.1979). "In most cases, this means parties of record at the time the judgment was entered, including such as have become parties by intervention, substitution or third-party practice." 9 Moore's Federal Practice ¶ 203.06 (2d ed. 1985). *See also Goldstein v. Andresen & Co.,* 465 F.2d 972, 973 n. 1 (5th Cir.1972) (Ordinarily, only a litigant who was a party below and who

is aggrieved by the judgment or order may appeal.). At the time the district court entered its order on Kelly & Son's motion for summary judgment and its disbursement order, appellants no longer were parties to this *in rem* action.

■ Moreover, to have standing a party must have an immediate and pecuniary interest, not a contingent interest. *Libby, McNeill, and Libby v. City National Bank,* 592 F.2d 504, 511 (9th Cir.1978).

"The interest must also be subsisting, for although a party may have an appealable interest at the commencement of a suit, if that interest has terminated before the entry of a judgment or decree sought to be appealed from, he cannot appeal. Again, the right or title which the appellant seeks to establish must be his own and not that of a third person."

*Mayer v. National Missile and Electronics, Inc.,* 326 F.2d 401, 402 (9th Cir.1964), *quoting from Hamilton Trust Co. v. Cornucopia Mines Co.,* 223 F. 494 (9th Cir. 1915). The district court in the instant case ruled on the rights between Kelly & Son and the government. It did not rule on the rights between Kelly & Son and appellants. "It is well settled under the standing doctrine that a party ordinarily may not assert the legal rights of others." *Diamantis v. Milton Bradley Co.,* 772 F.2d 3, 4 (1st Cir.1985), *citing Barrows v. Jackson,* 346 U.S. 249, 255 (1953); *Ripon Society v. Nat'l Republican Party,* 525 F.2d 567, 573 (D.C.Cir.1975), *cert. denied,* 424 U.S. 933 (1976). Appellants' *in rem* action no longer was before the court. A reversal of the district court would have no *direct* effect on appellants. Although appellants would have had an appealable interest if their *in rem* action had been proper and if they were injured by the disbursement, on the record before us they do not have a direct

---

**2.** Appellants argue that they have standing to appeal from the partial summary judgment entered February 13, 1984. We note that the record discloses that appellants appealed from that order but the appeal was dismissed for failure to prosecute. Appellants' motion to reconsider the February 13, 1984 judgment was denied on May 25, 1984. On February 28, 1985, appellants filed a notice of appeal from the February 12, 1985 final decree of foreclosure and order for disbursement. Kelly & Son did not appeal. Appellants' argument, nevertheless, focuses on the district court's refusal to grant Kelly & Son its entire storage costs, the issue addressed in the February 13, 1984 judgment.

interest in the district court's disbursement order.

Appellants seek to assert the rights of Kelly & Son because they may be required to pay Kelly & Son for its costs in storing the F/V Marco Antonio from the time of their seizure of the wrong vessel. Kelly & Son, however, has not commenced an action against appellants asserting such a claim.

Appellants analogize their interest to that of a surety, relying on *Celanese Coatings Co. v. Gullard,* 504 F.2d 466 (9th Cir.1974). Unlike the relationship between Kelly & Son and appellants here, in *Celanese* the surety stood in a contractual relationship with the principal, the surety was a party to the district court action, and the surety was aggrieved directly by the decision of the district court.

Appellants here have not demonstrated that they have a sufficient interest in the actions of the district court below or in the distribution of the proceeds from the sale of the F/V Marco Antonio. Moreover, they have not established the necessary direct injury to meet the standing requirements. We therefore dismiss the appeal for lack of standing on the part of appellants.

Dismissed.